# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

LEGAL MAIL - PROVIDED TO
POLK CORRECTIONAL INSTITUTION
DATE: 6/9/2026
OFFICER INITIALS: _____

| | |
|---|---|
| ALBERT RUSSELL WALMER, DC #465975, **Plaintiff,** v. EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION, LLC; and VERIZON WIRELESS, **Defendants.** | Case No.: 8:26-cv-1725-WFJ-LSG **COMPLAINT FOR DAMAGES FOR WILLFUL AND NEGLIGENT VIOLATIONS OF THE FAIR CREDIT REPORTING ACT** 15 U.S.C. §§ 1681, *et seq.* **JURY TRIAL DEMANDED** |

Plaintiff ALBERT RUSSELL WALMER ("Plaintiff" or "Walmer"), proceeding *pro se* and *in forma pauperis*, brings this action against Defendants EQUIFAX INFORMATION SERVICES, LLC ("Equifax"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"), TRANS UNION, LLC ("Trans Union"), and VERIZON WIRELESS ("Verizon"), collectively ("Defendants"), for willful and negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), and,

1

IFP

where applicable, the Fair and Accurate Credit Transactions Act ("FACTA"), Pub. L. 108-159.

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 15 U.S.C. § 1681p, which grants federal district courts jurisdiction over FCRA claims. The amount in controversy is not a jurisdictional prerequisite under the FCRA.

2. Venue is proper in the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(2). Plaintiff has been continuously confined at Polk Correctional Institution, 10800 Evans Road, Polk City, Florida 33868 (Polk County), which lies within this District. All dispute correspondence at issue was transmitted to and from this address. Defendants regularly conduct business throughout this District and are subject to personal jurisdiction herein.

3. This action is timely. Plaintiff first discovered Defendants' violations no earlier than August 2025 upon review of his Equifax consumer credit report. Under 15 U.S.C. § 1681p, claims must be brought

2

within two years of discovery, running no earlier than August 2027. Additionally, each subsequent furnishing and reporting of the fraudulent tradelines constitutes a continuing violation with its own limitations period. See Mack v. Equifax Credit Info. Servs., Inc., 873 F. Supp. 5 (E.D. Mich. 1994).

## II. PARTIES

4. Plaintiff Albert Russell Walmer (DC #465975) is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c). He is currently confined at Polk Correctional Institution under the custody of the Florida Department of Corrections ("FDOC"), where he has been incarcerated continuously since December 29, 2009.

5. Defendant EQUIFAX INFORMATION SERVICES, LLC ("Equifax") is a consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f), regularly engaged in assembling, evaluating, and disbursing consumer credit information to third parties. Equifax may be served at: Equifax Information Services LLC, P.O. Box 105069, Atlanta, Georgia 30348-5069, or through its registered agent.

6.  Defendant EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") is a CRA as defined by 15 U.S.C. § 1681a(f). Experian may be served through its National Consumer Assistance Center at: P.O. Box 9701, Allen, Texas 75013, or through its registered agent.

7.  Defendant TRANS UNION, LLC ("Trans Union") is a CRA as defined by 15 U.S.C. § 1681a(f). Trans Union may be served at: P.O. Box 2000, Chester, Pennsylvania 19016, or through its registered agent. Trans Union is joined as a defendant because, upon information and belief, the fraudulent tradelines described herein have been furnished to and reported by Trans Union as well as by Equifax and Experian.

8.  Defendant VERIZON WIRELESS ("Verizon") is a furnisher of information to consumer reporting agencies as contemplated by 15 U.S.C. § 1681s-2. Verizon may be served at its Legal Department / Credit Bureau Disputes: PO Box 65005, Dallas, Texas 75265.

## III.  FACTUAL ALLEGATIONS

**A. Plaintiff's Continuous Incarceration Since 2009**

4

9. Plaintiff Albert Russell Walmer has been continuously incarcerated in the custody of the Florida Department of Corrections since December 29, 2009. During his entire period of incarceration, Plaintiff has been physically confined within a correctional facility and has been legally incapable of entering into contracts, applying for credit, signing agreements, or authorizing any third party to obtain credit, financial products, or telecommunications services in his name.

10. Plaintiff did not open, authorize, co-sign, or receive any benefit from any credit account or cellular account during his incarceration. Plaintiff has never granted power of attorney, written authorization, or any other authorization for any person to act on his behalf with respect to financial or credit products. Any account opened in Plaintiff's name after December 29, 2009 could only have been opened through identity theft or fraud.

**B. Discovery of Fraudulent Tradelines on Plaintiff's Consumer Credit Reports**

11. In August 2025, Plaintiff obtained a copy of his Equifax consumer credit report, dated August 4, 2025 (Confirmation #5216508620),

5

which Equifax issued and delivered to Plaintiff at his prison address (Exhibit G). That report reflected a VantageScore of 520 (Poor) and identified "too many delinquent or derogatory accounts" as a primary negative factor. The report contained, at a minimum, the following two fraudulent tradelines:

(a)     **Verizon Wireless, Account #7266422270001** — Telecommunication/Cellular; original amount $1,107.00; opened March 30, 2023; Date of First Delinquency November 24, 2023; status: Collection Account; narrative codes: 057 (Collection Account) and 269 (Telecommunications/Cellular). See Exhibit G, p. 6.

(b) **Capital One Bank USA NA, Account #5178057962429663** — Credit Card; original amount $300.00; high credit $466.00; opened April 10, 2023; Date of First Delinquency July 31, 2023; status: Charge Off. See Exhibit G, p. 7. Plaintiff is informed that this tradeline has since been removed from his consumer credit reports. Plaintiff nonetheless preserves all claims arising from the unlawful reporting of this account during the period it

6

appeared, and from Defendants' failure to timely block or delete it upon receipt of Plaintiff's identity theft submissions.

12. Plaintiff also obtained his Experian consumer credit report (Report #0437-5304-14, Issue Date August 6, 2025), which at the time of issuance contained the same two fraudulent tradelines as the Equifax report — the Verizon Wireless collection account (Account #7266422270001) and the Capital One charge-off (Account #5178057962429663) — as furnished to Experian by those respective furnishers. Plaintiff is informed that the Capital One tradeline has since been removed from his consumer credit reports, though the Verizon Wireless tradeline continues to appear. All claims arising from the period during which Capital One was reported are fully preserved.

13. Upon information and belief, the Verizon Wireless tradeline (Account #7266422270001) has been furnished to and reported by Trans Union, LLC. Plaintiff alleges this based on the coordinated multi-bureau reporting practices of Verizon Wireless, which are standard in the industry. The Capital One tradeline has been reported as removed from consumer credit files; however, to the

extent it appeared on Plaintiff's Trans Union file during any period prior to removal, all claims arising therefrom are preserved.

14.  Both accounts were opened during Plaintiff's continuous incarceration. Plaintiff could not have opened the Verizon Wireless account on March 30, 2023, or the Capital One account on April 10, 2023, as he was physically confined on those dates and has been so confined since December 29, 2009. The telephone number associated with the Verizon account does not appear in Plaintiff's documented records. Plaintiff's authorization of, participation in, or benefit from either account is a physical and legal impossibility. While Plaintiff is informed that the Capital One tradeline has since been removed from his consumer credit reports, the Verizon Wireless tradeline (Account #7266422270001) continues to be reported, and all claims arising from both accounts during the periods they were reported are fully preserved.

## C.  Plaintiff's Dispute History and Defendants' Responses

15. August 19, 2025 — First Dispute to Experian. Plaintiff submitted a notarized Affidavit of Disputed Collection Account to Experian's

8

NCAC (Exhibit A), identifying both the Verizon Wireless and Capital One accounts, documenting his continuous incarceration, and invoking his rights under 15 U.S.C. § 1681i and 12 C.F.R. § 1022.43. The 30-day reinvestigation deadline expired on approximately September 18, 2025. Experian did not conduct any reinvestigation, notify the furnishers, communicate results to Plaintiff, or delete or modify either tradeline.

16. August 16, 2025 — First Equifax Response. In response to Plaintiff's FDOC identification submission and notarized affidavit, Equifax responded stating that Plaintiff's identifying information "does not match the information we currently have on your credit file" (Exhibit H). As a condition of processing any dispute, Equifax demanded: (a) a pay stub with complete 9-digit Social Security number; (b) a W-2 form with Social Security number; or (c) a valid Social Security card; AND (d) a driver's license, rental/lease agreement, pay stub with address, or utility bill. None of these documents are obtainable by an incarcerated person. Critically, Equifax had already located Plaintiff's credit file and issued him

the August 4, 2025 credit report (Exhibit G) using the same identifying information it now claimed was insufficient.

17. September 30, 2025 — Second Dispute to Experian. Plaintiff submitted a second written dispute to Experian's NCAC (Exhibit B), specifically identifying deficiencies in the reporting of each fraudulent account and demanding verification documentation under 15 U.S.C. §§ 1681g and 1681e(b). The 30-day deadline expired on approximately October 30, 2025. Experian did not reinvestigate, notify the furnishers, communicate results, or delete or modify either tradeline.

18. November 20, 2025 — Notarized Identity Theft Affidavit to Equifax and Experian. Plaintiff submitted a notarized Identity Theft Affidavit (Exhibit C) to both Equifax and Experian, executed under penalty of perjury and notarized by Notary Public Dannielle Dotson (Commission #HH678710, Florida, Expires 5/22/2029). The affidavit included Plaintiff's FDOC ID (DC #465975), Social Security number documentation, and a sworn statement that neither account represents a transaction of Plaintiff's. This submission satisfied all four elements of 15 U.S.C. § 1681c-2(a): (1)

appropriate proof of identity; (2) a copy of an identity theft report; (3) identification of the specific accounts resulting from identity theft; and (4) a statement that the information is not related to any transaction of the consumer. Each bureau was required to block both tradelines within 4 business days of receipt — by no later than approximately November 26, 2025. Neither bureau blocked any account.

19. December 2, 2025 — Equifax Response. Equifax acknowledged Plaintiff's correspondence regarding fraudulent items (Exhibit I), stating it was "here to assist." Rather than blocking the accounts or reinvestigating, Equifax again requested account names, account numbers, and all original documents, without initiating any reinvestigation.

20. December 12, 2025 — Final Demand Letter. Plaintiff submitted a Final Demand for Removal and Verification of Fraudulent Accounts to both Equifax and Experian (Exhibit D), citing specific FCRA provisions and demanding deletion within 15 calendar days. Neither bureau complied.

21. December 15, 2025 (mailed) / December 30, 2025 (received) — CFPB Complaints. Plaintiff mailed a formal complaint to the Consumer Financial Protection Bureau (Exhibit E). The CFPB confirmed receipt on December 30, 2025, issuing Complaint ID 251230-27308429 (directed to Equifax) and Complaint ID 251230-27309347 (directed to Experian). See Exhibits L and M. Both bureaus responded to the CFPB that they were "still working on the issue." The CFPB closed both complaints "with response" as of February 5, 2026 (Equifax) and February 21, 2026 (Experian), without deletion of either fraudulent tradeline.

22. December 31, 2025 — Equifax Second Identity Mismatch Response. Equifax responded again, stating Plaintiff's identifying information "does not match" and again demanding pay stubs, W-2 forms, Social Security cards, driver's licenses, rental agreements, and utility bills (Exhibit J). None of these documents are obtainable by an incarcerated person.

23. January 3, 2026 — Equifax Multiple Contradictory Responses. Equifax issued at least four separate letters dated January 3, 2026 (Exhibit K). Some letters claimed Equifax "was unable to

12

locate a credit file." Other letters from the same date acknowledged "items on the credit file that you state are inaccurate," yet again demanded account names, account numbers, and all original documents. The simultaneous issuance of contradictory letters — some denying the existence of a file, others acknowledging it — demonstrates bad faith and systematic non-compliance with the FCRA.

24. February 5, 2026 — Plaintiff's Comprehensive Dispute to Equifax. Plaintiff submitted an additional written dispute to Equifax (Exhibit N), specifically identifying inaccurate addresses, phone numbers, the Capital One charge-off, and the Verizon Wireless collection account, and demanding correction or deletion under the FCRA.

25. February 26, 2026 — Presuit Notice to Verizon Wireless. Plaintiff submitted an Official Presuit Notice, Demand for Settlement, and Notice of Intent to Sue to Verizon Wireless (Exhibit F), providing documentary evidence of his continuous incarceration since December 29, 2009 and demanding removal of the fraudulent

tradeline. Verizon did not respond with any settlement offer or remove the fraudulent tradeline.

26. March 5, 2026 — Equifax Final Response. Equifax responded a final time prior to this filing, stating: "We were unable to locate a credit file in our database with the identification information you provided" (Exhibit O), and again demanding pay stubs, W-2 forms, Social Security cards, driver's licenses, rental agreements, and utility bills. This response is irreconcilable with the fact that Equifax successfully located, prepared, and delivered Plaintiff's complete 12-page credit report to him on August 4, 2025 using the identical identifying information. The March 5, 2026 letter is itself addressed to Plaintiff at 10800 Evans Road, Polk City, FL 33868 — his exact prison address.

27. As of the filing of this Complaint, both the Verizon Wireless collection account and the Capital One charge-off continue to appear on Plaintiff's consumer credit reports maintained and disseminated by Equifax and Experian. Verizon continues to furnish the fraudulent Verizon account information to one or more

14

consumer reporting agencies. No Defendant has deleted, blocked, or modified either fraudulent tradeline.

28. Experian has never responded directly to Plaintiff's three written disputes submitted on August 19, 2025 (Exhibit A), September 30, 2025 (Exhibit B), and November 20, 2025 (Exhibit C). The 30-day reinvestigation deadlines for the August 19 and September 30 disputes expired on approximately September 18, 2025 and October 30, 2025, respectively, without any investigation, deletion, verification, or communication by Experian.

## IV. CLAIMS FOR RELIEF

## COUNT I

### Violation of 15 U.S.C. § 1681i(a)(1)(A)
### Failure to Conduct Reasonable Reinvestigation
*(Against Defendant Experian)*

29. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

30. Section 1681i(a)(1)(A) requires that upon receipt of a consumer's written dispute, a consumer reporting agency must conduct a free

15

and reasonable reinvestigation within 30 days to determine whether the disputed information is inaccurate. If information cannot be verified, the CRA must promptly delete or modify it. 15 U.S.C. § 1681i(a)(5)(A).

31. Following Plaintiff's written disputes of August 19, 2025 (Exhibit A) and September 30, 2025 (Exhibit B), Experian was required to reinvestigate the disputed Verizon Wireless and Capital One tradelines and to delete or modify those tradelines if they could not be verified, within 30 days of each dispute.

32. Experian failed to conduct any reinvestigation in response to either dispute. Experian failed to communicate any results to Plaintiff. Experian failed to delete or modify either fraudulent tradeline. The statutory deadlines expired on approximately September 18, 2025 and October 30, 2025, without any action by Experian whatsoever.

33. Experian's complete failure to respond to two timely, documented written disputes from a consumer who demonstrated, through a notarized sworn affidavit, the physical impossibility of his having opened the accounts in question, constitutes reckless disregard of

16

its FCRA obligations and is willful within the meaning of 15 U.S.C. § 1681n and Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007). Plaintiff is entitled to statutory damages of $100–$1,000 per willful violation (two violations under this Count), punitive damages, and attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

34.  In the alternative, if the conduct is found negligent rather than willful, Plaintiff is entitled to actual damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681o.

## COUNT II

### Violation of 15 U.S.C. § 1681c-2
### Failure to Block Identity Theft Information Within 4 Business Days
*(Against Defendant Experian)*

35.  Plaintiff incorporates by reference all preceding paragraphs.

36.  Section 1681c-2(a) requires a CRA, upon receiving: (1) appropriate proof of the consumer's identity; (2) a copy of an identity theft report; (3) identification of the specific information claimed to result from identity theft; and (4) a statement by the consumer that the information is not related to any transaction of the

17

consumer — to block such information from the consumer's file within 4 business days after receiving such submission.

37. Plaintiff's November 20, 2025 Identity Theft Affidavit (Exhibit C) satisfied all four statutory elements: (1) notarized FDOC ID (DC #465975) and Social Security number documentation; (2) the affidavit itself, executed under penalty of perjury, constitutes an identity theft report; (3) specific identification of the Verizon Wireless and Capital One accounts; and (4) Plaintiff's sworn statement that neither account is related to any transaction of his. Experian was required to block both tradelines by no later than approximately November 26, 2025.

38. Experian failed to block either tradeline within the 4-business-day deadline or at any time thereafter. Experian also failed to notify the furnishers of the identity theft as required by § 1681c-2(b). Both accounts continued to appear on Plaintiff's Experian credit profile after the block deadline. Each failure to block constitutes a separate willful violation. Plaintiff is entitled to statutory damages, punitive damages, and fees and costs pursuant to 15 U.S.C. § 1681n.

18

## COUNT III

### Violation of 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
*(Against Defendant Experian)*

**39.** Plaintiff incorporates by reference all preceding paragraphs.

**40.** Section 1681e(b) requires that whenever a CRA prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information contained therein.

**41.** Experian violated § 1681e(b) by including in Plaintiff's consumer credit file, and transmitting to third parties, the Verizon Wireless and Capital One tradelines, both opened in 2023 while Plaintiff had been continuously incarcerated since 2009. Any reasonable accuracy procedure would have flagged accounts opened during a consumer's documented long-term incarceration as requiring heightened verification before inclusion. Experian's failure to implement such a procedure, and its affirmative transmission of unverified identity-theft accounts, violates § 1681e(b). Plaintiff is entitled to statutory damages, punitive damages, and fees and costs pursuant to 15 U.S.C. § 1681n.

19

## COUNT IV

### Violation of 15 U.S.C. § 1681c-2
### Failure to Block Identity Theft Information Within 4 Business Days
*(Against Defendant Equifax)*

**42.** Plaintiff incorporates by reference all preceding paragraphs.

**43.** As described in paragraph 37, Plaintiff's November 20, 2025 Identity Theft Affidavit (Exhibit C) satisfied all four elements of 15 U.S.C. § 1681c-2(a). Equifax was required to block both the Verizon Wireless and Capital One tradelines from Plaintiff's credit file within 4 business days of receipt — i.e., by no later than approximately November 26, 2025.

**44.** Rather than blocking the tradelines, Equifax issued a series of letters demanding identity verification documents impossible for an incarcerated person to obtain (Exhibits H, I, J, K, O). Neither fraudulent account has been blocked or removed from Plaintiff's Equifax credit file. Each unblocked account constitutes a discrete willful violation. Plaintiff is entitled to statutory damages ($100–$1,000 per violation), punitive damages, and attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

# COUNT V

## Violation of 15 U.S.C. §§ 1681i(a)(1)(A) and 1681i(a)(5)(A)
## Failure to Conduct Reasonable Reinvestigation and Delete Unverifiable Information
### *(Against Defendant Equifax)*

**45.** Plaintiff incorporates by reference all preceding paragraphs.

**46.** Plaintiff submitted written disputes to Equifax on November 20, 2025 (Exhibit C), December 12, 2025 (Exhibit D), February 5, 2026 (Exhibit N), and through the CFPB complaint process (Exhibits L, M). Each submission triggered Equifax's obligation under 15 U.S.C. § 1681i(a)(1)(A) to conduct a reasonable reinvestigation within 30 days and to delete or modify any information that could not be verified.

**47.** Equifax responded to each dispute with boilerplate, contradictory form letters — in some instances simultaneously claiming inability to locate Plaintiff's credit file while in other letters from the same date acknowledging disputed items in that very file. See Exhibits H, I, J, K, O. These contradictory responses do not constitute a "reasonable reinvestigation" as required by § 1681i. See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147 (9th Cir.

21

2009); Jones v. Experian Info. Solutions, Inc., 982 F. Supp. 2d 268 (S.D.N.Y. 2013).

48. Under § 1681i(a)(5)(A), a CRA must promptly delete information that is inaccurate, incomplete, or cannot be verified. Because the Verizon Wireless and Capital One accounts were opened during Plaintiff's documented continuous incarceration, they cannot be verified as legitimate obligations of Plaintiff, and Equifax was required to delete them. Equifax's failure to do so despite multiple disputes spanning months constitutes willful violation. Plaintiff is entitled to statutory damages, punitive damages, and fees and costs pursuant to 15 U.S.C. § 1681n.

## COUNT VI

### Violation of 15 U.S.C. § 1681i(a)(1)(A)
**Systematic Imposition of Unauthorized and Impossible Identity Verification Barriers Against an Incarcerated Consumer**
*(Against Defendant Equifax)*

49. Plaintiff incorporates by reference all preceding paragraphs.

50. This Count arises from Equifax's repeated, systematic imposition of identity verification conditions that are unauthorized by the

22

FCRA and that Equifax knew, or should have known, are physically impossible for an incarcerated consumer to satisfy.

51. On August 4, 2025, Equifax successfully located, prepared, and delivered to Plaintiff at his prison address his complete 12-page consumer credit report (Exhibit G, Confirmation #5216508620) using: Plaintiff's name; his FDOC identification number (DC #465975); his Social Security number; and his address of record at 10800 Evans Road, Polk City, Florida 33868.

52. Despite having successfully processed a credit report request using these exact credentials, Equifax thereafter — on August 16, 2025 (Exhibit H), December 2, 2025 (Exhibit I), December 31, 2025 (Exhibit J), January 3, 2026 (Exhibit K), and March 5, 2026 (Exhibit O) — claimed it could not locate Plaintiff's file using those same credentials, and imposed as conditions for dispute processing the following documents, none of which are obtainable by an incarcerated person: (a) a pay stub with complete 9-digit Social Security number; (b) a W-2 form with Social Security number; (c) a valid Social Security card; (d) a driver's license; (e) a rental or lease agreement; or (f) a utility bill.

53. The FCRA does not authorize consumer reporting agencies to impose conditions on dispute processing beyond those inherent in the statute. Section 1681i(a)(1)(A) requires Equifax to conduct a reasonable reinvestigation upon receipt of a consumer's dispute; it does not permit Equifax to demand employment-based, residency-based, or transportation-based documentation as prerequisites from an incarcerated consumer who is physically incapable of obtaining such documents. These demands are not a reasonable exercise of identity verification — they constitute an impenetrable procedural barrier for this class of consumers.

54. Equifax's five-month pattern of demanding documents it knew Plaintiff could not obtain — while simultaneously and contradictorily using and then disavowing the sufficiency of Plaintiff's correctional ID — demonstrates willful obstruction of the FCRA dispute process within the meaning of 15 U.S.C. § 1681n and Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007). Each such letter constitutes a separate violation. Plaintiff is entitled to statutory damages ($100–$1,000 per violation), punitive damages, and attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

# COUNT VII

## Violation of 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
*(Against Defendant Equifax)*

55. Plaintiff incorporates by reference all preceding paragraphs.

56. Section 1681e(b) required Equifax to follow reasonable procedures to assure maximum possible accuracy of consumer credit information. Reporting accounts as belonging to a consumer who has been continuously incarcerated since December 2009, when both accounts were opened in 2023, without investigating the consumer's documented incarceration, violates this accuracy standard. The VantageScore of 520 (Poor) on Plaintiff's Equifax report (Exhibit G), driven in part by "too many delinquent or derogatory accounts," is a direct and measurable consequence of Equifax's failure to maintain accuracy procedures sufficient to detect identity theft in accounts facially inconsistent with the consumer's known status. Plaintiff is entitled to statutory damages, punitive damages, and fees and costs pursuant to 15 U.S.C. § 1681n.

25

## COUNT VIII

**Violation of 15 U.S.C. §§ 1681i(a)(1)(A), 1681c-2, and 1681e(b)**
**Failure to Reinvestigate, Failure to Block Identity Theft Information, and Failure to Maintain Accurate Procedures**
*(Against Defendant Trans Union, LLC)*

57. Plaintiff incorporates by reference all preceding paragraphs.

58. Upon information and belief, Trans Union has reported one or both of the fraudulent tradelines described herein on Plaintiff's consumer credit file. As a CRA, Trans Union is subject to the same obligations as Equifax and Experian under §§ 1681i, 1681c-2, and 1681e(b).

59. To the extent Trans Union has received any consumer dispute, identity theft submission, or furnisher notification regarding the fraudulent Verizon Wireless or Capital One accounts, and has failed to block, reinvestigate, or delete those accounts as required, Trans Union has committed the same violations described in Counts I through III above. Plaintiff specifically reserves the right to amend this Complaint upon receipt of his Trans Union credit file, which Plaintiff has been unable to obtain due to verification barriers substantially similar to those erected by Equifax. Plaintiff

is entitled to statutory damages, punitive damages, and fees and costs pursuant to 15 U.S.C. § 1681n.

## COUNT IX

### Violation of 15 U.S.C. § 1681s-2(b)
### Failure to Investigate Disputed Information and Correct or Delete Fraudulent Account After CRA Notification
*(Against Defendant Verizon Wireless)*

60. Plaintiff incorporates by reference all preceding paragraphs.

61. Upon receiving notice from Equifax and/or Experian that Plaintiff disputed the Verizon Wireless account (Account #7266422270001, $1,107.00) as inaccurate and resulting from identity theft, Verizon was required under 15 U.S.C. § 1681s-2(b) to: (1) conduct a reasonable investigation of the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; and (4) if the information was found inaccurate, incomplete, or unverifiable, modify, delete, or permanently block its reporting.

62. Verizon failed to conduct any reasonable investigation and continued furnishing the Verizon Wireless account to consumer

reporting agencies despite: (a) receiving notice of Plaintiff's identity theft claim through the consumer dispute process; and (b) receiving Plaintiff's February 26, 2026 Presuit Notice (Exhibit F), which provided documentation of Plaintiff's continuous incarceration since December 29, 2009.

63. Under 15 U.S.C. §§ 1681s-2(a)(1)(B) and 1681c-2, after a furnisher is notified that information it provided resulted from identity theft, it may not continue furnishing that information to any CRA. Verizon's continued furnishing of the fraudulent account after receiving such notice constitutes a willful violation under 15 U.S.C. § 1681n. Plaintiff is entitled to statutory damages, punitive damages, and attorney's fees and costs.

## V. DAMAGES

64. As a direct and proximate result of Defendants' willful violations of the FCRA, Plaintiff has suffered and continues to suffer the following damages:

(a) **Statutory Damages.** Statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15

U.S.C. § 1681n(a)(1)(A). The discrete violations set forth in Counts I through IX total no fewer than twenty (20) separately actionable willful violations, yielding a minimum statutory floor of $20,000, exclusive of punitive damages. Each Equifax demand letter imposing an impossible identity verification barrier constitutes an additional, separate violation.

(b) **Punitive Damages.** Punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. § 1681n(a)(2). The duration of the violations, the volume of contradictory responses, the systematic pattern of impossible verification demands directed at a documented incarcerated consumer, Equifax's knowing issuance of a credit report using the very credentials it subsequently disavowed, Experian's complete failure to respond to three separate timely disputes, and Verizon's continued furnishing of a fraudulent account after explicit notice of fraud, collectively demonstrate egregious, reckless, and willful conduct warranting substantial punitive damages.

29

(c) **Actual Damages.** Actual damages including: (1) reputational harm and damage to creditworthiness, as demonstrated by Plaintiff's VantageScore of 520 (Poor) on his Equifax credit report (Exhibit G), driven in part by "too many delinquent or derogatory accounts"; (2) emotional distress resulting from Plaintiff's knowledge that fraudulent accounts are being reported in his name while he is physically confined and unable to take conventional remedial action; and (3) prospective economic harm to Plaintiff's ability to obtain credit, housing, and employment upon his anticipated release from incarceration.

(d) **Attorney's Fees and Costs.** Reasonable attorney's fees and costs of litigation pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Albert Russell Walmer respectfully requests that this Court:

1.  Enter judgment against each Defendant for willful violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.;

2. Award Plaintiff statutory damages of $1,000 per willful violation against each Defendant pursuant to 15 U.S.C. § 1681n(a)(1)(A);

3. Award Plaintiff punitive damages against each Defendant in an amount to be determined by the jury pursuant to 15 U.S.C. § 1681n(a)(2);

4. Award Plaintiff actual damages in an amount to be proven at trial;

5. Award Plaintiff reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

6. Issue a permanent injunction requiring Defendants Equifax, Experian, and Trans Union to immediately block and delete the Verizon Wireless tradeline and the Capital One tradeline from Plaintiff's consumer credit files at all consumer reporting agencies;

7. Issue a permanent injunction requiring Defendant Verizon Wireless to immediately cease furnishing any account information related to Account #7266422270001 to any consumer reporting agency;

8. Issue a declaratory judgment that Equifax's practice of demanding employment-based, residency-based, and transportation-based identity documents from incarcerated consumers — after having already located and issued a consumer's credit file using government-issued correctional identification — constitutes a willful violation of 15 U.S.C. § 1681i(a)(1)(A) as applied to incarcerated consumers; and

9. Award such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Albert Russell Walmer, declare under penalty of perjury under the laws of the United States of America that the foregoing Complaint is true and correct to the best of my knowledge, information, and belief.

Executed on: ___JUNE 9th_____, 2026

32

Albert Russell Walmer, DC #465975

Polk Correctional Institution

10800 Evans Road

Polk City, Florida 33868

Plaintiff, Pro Se